UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK J. PALMER,<br><br>       Petitioner,<br><br>v.<br><br>RAYMOND MADDEN,<br><br>       Respondent. | Case No.:  16CV2130 BAS (BGS)<br><br>**REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Frederick J. Palmer ("Petitioner" or "Palmer") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1 ("Pet.").[1])  A jury found Petitioner guilty of selling a controlled substance and misdemeanor resisting arrest and he was sentenced to eleven years.[2]

The Petition is organized into six grounds for relief: (1) trial court erred in sustaining police officer's surveillance privilege claim; (2) trial court erred in failing to *sua sponte* give an expert opinion instruction; (3) trial court erred in failing to *sua sponte*

---

[1] All citations to the Petition are to the ECF chronological page numbers for ease of reference.
[2] Case No. SCD 253727 in the Superior Court of San Diego County

give an instruction on the union of act and intent or mental state; (4) ineffective assistance of counsel, failing to strike prior strike and insufficiency of the evidence, and cumulative error;[3] (5) augment request;[4] and (6) unauthorized sentence.

The Court submits this Report and Recommendation to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. After consideration of the Petition, Respondent's Answer, as well as all lodgments the Court recommends the Petition be denied.

# I.     BACKGROUND

## A.     Factual Background

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). Accordingly, the following facts are taken from the California Court of Appeal opinion:

B. The People's Case

On January 24, 2014, Palmer sold 0.16 grams of cocaine base to San Diego Police Officer Radford Pajita. Officer Pajita testified that at around 5:00 p.m., while he working undercover as a member of a narcotics sale surveillance team (surveillance team), he approached a group of four people—two men and two women—on the southeast corner of Park Boulevard and E Street in San Diego, an area known for high narcotics activity. He asked the shorter of the two men—a Black male wearing a

---

[3] As explained more fully below, it is hard to assess exactly what Petitioner is claiming under Ground Four, but the Court has attempted to decipher any claims and address each.
[4] Although Petitioner identifies a "Ground Five: Augment requests," it does not appear to be a ground for habeas relief. Additionally, Petitioner seems to restate this request more briefly under a subheading seven later in his Petition. (Pet. at 26.) The Court maintains Petitioner's numbering of his grounds for ease of reference to his Petition.

Black hoodie—for a "twenty," which is street jargon for $20 worth of narcotics. The man said he did not have any. As Officer Pajita began to walk away, the other man—a bigger Black male wearing a gray hooded sweatshirt (Palmer)—asked Officer Pajita what he was looking for. When Officer Pajita said he wanted a "twenty," Palmer looked both ways down Park Boulevard and then held out his hand. In his hand were three rocks of cocaine base. Officer Pajita, who was wearing a one-way radio transmitter, handed Palmer a prerecorded $20 bill in exchange for the cocaine base. Officer Pajita began walking away and then transmitted a "bust signal" to the other police officers in the surveillance team, who were monitoring his unrecorded transmissions. Officer Pajita testified he gave the other officers a description of the person from whom he had bought the drugs, telling them he was a Black male wearing a gray hooded sweatshirt and "wired" glasses.

At trial, Officer Pajita identified Palmer, who was in the courtroom, as the man who sold him the cocaine base. Officer Pajita testified that he recognized Palmer because he and Palmer were "literally a foot apart" at the time of the transaction, and he noticed at that time that Palmer's hair was tied in the back in a pony tail and he wore wired glasses.

After Officer Pajita identified Palmer, the prosecutor showed Officer Pajita a photograph and asked him whether he recognized it. Officer Pajita responded that he recognized it as a photograph of Palmer that was taken on January 24, 2014, after he was arrested. Officer Pajita testified that the photograph accurately depicted what Palmer looked like on that day because it showed Palmer wearing the "same clothing," the "same wire glasses," the "same hooded sweatshirt" that "he was wearing when he sold [Officer Pajita] the narcotics and when he was taken into custody." The photograph was then shown to the jury.

San Diego Police Detective Jesus Sanchez testified he was part of the surveillance team on January 24, 2014; he was wearing plain clothes and monitoring Officer Pajita over the one-way wire that Officer Pajita was wearing; and he heard Officer Pajita say: "Gray sweatshirt, gray sweatshirt." Detective Sanchez testified that this meant that Officer Pajita "had just purchased narcotics from somebody wearing a gray sweatshirt." Detective Sanchez testified that as Officer Pajita was saying this, he (Detective Sanchez) saw a Black male wearing a gray sweatshirt walking along Park Boulevard away from Officer Pajita and then turning onto E Street. Detective Sanchez testified he "lost visual as soon as [the Black male] turned the corner." He did not see anyone else wearing a gray sweatshirt.

16CV2130 BAS (BGS)

Detective Sanchez radioed the man's description and direction of travel to uniformed officers, including San Diego Police Officer Marlo Woods.

Officer Woods, wearing a full police uniform and driving a marked police vehicle, observed a Black male wearing a gray hooded sweatshirt walking westbound near Park Boulevard. At trial, Officer Woods identified Palmer as the man he observed from his police vehicle. Officer Woods testified that he had been called in by one of the undercover officers in the area to "detain that person." Officer Woods also testified that, after he saw Palmer, he stopped and exited his vehicle, approached Palmer on the 1100 block of E Street, and told him to wait there. As Officer Woods approached him, Palmer began walking backwards and started looking around. Officer Woods testified he had a feeling Palmer was getting ready to run, so he told Palmer not to run. Palmer then "took off running."

Officer Woods further testified that Palmer ran across E Street, jumped a fence, and ran through a parking lot toward 11th Avenue. While Officer Woods pursued him on foot, San Diego Officer Christopher Blomberg, who also was wearing a police uniform and driving a marked police vehicle, drove toward Palmer's location on 11th Avenue. Officer Blomberg drove his vehicle onto the sidewalk, got out, and yelled at Palmer to stop. Palmer stopped running and turned around. Officer Woods ordered Palmer to get on the ground, and he complied. Officers Woods and Blomberg then arrested Palmer. At trial, Officer Blomberg identified Palmer as the suspect he handcuffed.

B. Defense Case
The defense did not present any evidence. During closing arguments, defense counsel argued that the prosecution failed to prove beyond a reasonable doubt that Palmer was the person who sold the cocaine base to Officer Pajita.

(Lodgment 9 at 3-6.)

## II.    Procedural History

On August 21, 2014, a jury found Petitioner guilty of selling a controlled substance (Cal. Health & Saf. Code § 11352(a)) and misdemeanor resisting arrest (Pen. Code § 148(a)).  (Lodgment 1-3 at 337-338; Lodgment 3 at 153-154.)  On August 25, 2014, the trial court found Petitioner had one prior conviction for narcotics sales (Cal. Health &

Saf. Code § 11370.2(a)), one prior strike conviction for purposes of California's Three Strikes Law (Pen. Code § 245(a)(1)), and had served two prior prison terms.[5]  (Lodgment 1-3 at 350-352.)  On October 4, 2014, Petitioner's motion to strike his prior strike was denied and he was sentenced to 11 years for the conviction for selling a controlled substance (four years doubled under the Three Strikes law to eight, plus three years for a prior narcotics sales conviction).[6]  (Lodgment 1-4 at 357-358.)  The trial court initially stayed the two prison priors, but later struck them.  (*Id.* at 358; Lodgment 5 at 40.01, 46-48.)

On June 17, 2015, Petitioner filed an appeal with the California Court of Appeal raising five issues: (1) trial court erred in sustaining privilege claims under California Evidence Code § 1040;[7] (2) trial court erred by failing to *sua sponte* instruct the jury regarding the weight to give expert testimony; (3) trial court erred in failing to *sua sponte* instruct the jury regarding the union of act and mental state; (4) trial court erred in denying motion to strike Petitioner's prior strike conviction; and (5) cumulative error.  (Lodgment 6.)  As discussed in more detail below, the Court of Appeal affirmed the judgment in a reasoned decision.  (Lodgment 9.)  Petitioner raised similar claims in a Petition to the California Supreme Court.  (Lodgment 10.)  It was summarily denied.  (Lodgment 11.)

Petitioner filed his federal Petition on August 22, 2016.  (ECF No. 1.)  The Petition was initially dismissed for failing to pay the filing fee or provide adequate support for his request to proceed *in forma pauperis*.  (ECF No. 6.)  The case was reopened on December 12, 2016 because Petitioner paid the filing fee.  (ECF No. 8.) The Court issued

---

[5] Petitioner waived a jury determination on his priors.  (Lodgment 1-1 at 13-14.)

[6] Petitioner was also sentenced to 180 days concurrent for the misdemeanor conviction for resisting arrest.

[7] All further code section references are to the California Evidence Code unless otherwise noted.

5

a briefing schedule. (*Id.*) Respondent timely responded to the Petition on February 14, 2017. (ECF Nos. 10-11.) Petitioner did not file a Traverse.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applicable to this Petition, a habeas petition will not be granted unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

"The 'contrary to' and 'unreasonable application of' clauses in § 2254(d)(1) are distinct and have separate meanings." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73-75 (2003)). "Under the 'contrary to' clause of § 2254(d)(1), a federal court may grant relief only when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Loher v. Thomas*, 825 F.3d 1103, 1111 (9th Cir. 2016) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

"Under the 'unreasonable application' clause of § 2254(d)(1), 'a state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoners case.'" *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014). Unreasonable application is "not merely wrong" or "even clear error." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). It must be "objectively unreasonable." *Id.* "To satisfy this high bar, a habeas petitioner is required to 'show that

the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 1377 (quoting *Richter*, 562 U.S. at 103). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. *Taylor*, 529 U.S. at 411.

Under § 2254(d)(2) "a petitioner may challenge the substance of the state court's finding and attempt to show that those findings were not supported by substantial evidence" or "challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). "Regardless of the type of challenge, 'the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Id.* "[W]hen the challenge is to the state courts procedure, . . . [the court] must be satisfied that *any* appellate court to whom the defect in the state court's fact-finding process is pointed out would be unreasonable in holding that the state courts fact-finding process was adequate.'" *Id.* at 1146-47; *see also Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). (the federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.").

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned decision and presumes it provides the basis for the higher court's denial of a claim or claims.[8] *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-

---

[8] The Court notes that the United States Supreme Court granted certiorari in *Wilson v. Sellers*, 2017 WL 737820, on February 27, 2017, to address whether the Supreme Court's

06 (1991); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013). Here, the California Court of Appeal's April 4, 2016 decision is the last reasoned decision.

## IV. DISCUSSION

### A. Ground One – Surveillance Privilege, Evidence Code § 1040

Petitioner claims that the trial court erred in sustaining Officer Pajita's claims of privilege under Evidence Code § 1040 without following the procedures mandated by Evidence Code §§ 1040 and 1042. As detailed more fully below, Officer Pajita invoked Evidence Code § 1040 in response to two questions on cross examination. The first was where the other members of the surveillance team were. The second was how many officers were observing the events. The trial court sustained the privilege claim as to both, indicating he would not be required to answer any questions that would compromise officer safety, and Officer Pajita was not required to disclose the information. As discussed more fully below, the Court of Appeal found no error in the trial court sustaining the privilege and that even if there were any error, it was harmless.

#### 1. Evidence Code §§ 1040 & 1042

The Court provides the following overview of the "surveillance post" privilege for reference in considering Petitioner's claim and the Court of Appeal's decision. Section 1040 "provides a privilege for nonpublic 'information acquired in confidence by a public employee in the course of his or her duty,' the disclosure of which would be 'against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice.'" *People v. Lewis*, 172 Cal. App. 4th 1426, 1431 (2009) (quoting Evid. Code § 1040). "[A] police surveillance post falls within the ambit of the privilege granted by section 1040." *Id.* In *People v. Montgomery*, the court explained that the "surveillance location privilege," similar to the confidential informer privilege, recognizes that hidden surveillance

_____

decision in *Harrington*, 562 U.S. 86, silently abrogated *Ylst*'s direction to look through a summary ruling to the last reasoned decision.

locations may continue to be useful for law enforcement, but only if those locations remain secret. 205 Cal. App. 3d 1011, 1019 (1988). The court went on to explain that disclosing the unknown surveillance location may also threaten the safety of officers using the location in the future or the property owners allowing law enforcement to use the location. *Id.*; *see also People v. Walker*, 230 Cal. App. 3d 230, 235-36 (1991) (summarizing justifications for the privilege). The privilege is typically at issue when a defendant seeks testimony about the location from which a testifying officer observed a drug transaction to challenge the accuracy of the testimony, *i.e.* too far away to see the defendant or transaction clearly due to an obstructed view or based on the distance. *See Lewis*, 172 Cal. App. 4th at 1432-1437 (summarizing cases).

When a claim of privilege is raised, a defendant challenging the claim must make a prima facie showing for disclosure. *Montgomery*, 205 Cal. App. 3d at 1021; *see also People v. Oppel*, 222 Cal. App. 3d 1146, 1152 (1990) (analyzing § 1042 procedure with regard to confidential information and explaining "[i]t is incumbent on the defendant to make a prima facie showing for disclosure before an in camera hearing is appropriate.") If the defendant makes that prima facie showing, the court should then "hold an in camera hearing attended by the party claiming the privilege" and allow the defendant "an opportunity to propose questions to be asked at this hearing." *Montgomery*, 205 Cal. App. 3d at 1021.

Then, under § 1042, if the trial court sustains the privilege, the court 'shall make such order or finding of fact adverse to the prosecution as is required by law upon any issue in the proceeding to which the privileged information is material.'" *Lewis*, 172 Cal. App. 4th at 1432 (quoting § 1042)). "[T]he location from which the surveillance was performed is not material, for purposes of section 1042's adverse finding requirement, if the accuracy of the testifying officer's testimony about the surveillance observations is unquestioned, or at least is sufficiently corroborated by independent evidence such that there is no realistic possibility that disclosing the surveillance location would create a reasonable doubt in the minds of a reasonable jury about the officer's veracity." *Lewis*,

172 Cal. App. 4th 1426, 1438 (2009); *see also People v. Bradley*, 7 Cal. App. 5th 607, 624 (2017) ("A surveillance location is not material where the officer's testimony about what he saw is sufficiently corroborated by independent evidence.").

## 2. Analysis

As explained above, under AEDPA, the Court considers only whether the Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Early v. Packer*, 537 U.S. at 8; § 2254(d). Here, the Court of Appeal found no error in the trial court's application of §§ 1040 and 1042. The court found Petitioner was afforded an opportunity to make a prima facie showing for disclosure and even if he was not, the error was harmless because he would not have been able to establish a prima facie need for disclosure. (Lodgment 9 at 11-19.) The court additionally rejected Petitioner's claim that if the proper procedures were followed, he would have been entitled to an adverse finding, such as striking Officer Pajita's testimony.

As to the opportunity to make a prima facie showing, the Court of Appeal found Petitioner had at least two opportunities to make that showing in favor of disclosure. First, the court found he could have attempted to raise the issue following the first question that prompted the privilege claim. (*Id.* at 12.) When Officer Pajita invoked the privilege in response to the question about where the other officers were located ("where was the surveillance?"), the trial court sustained the privilege, but Petitioner made no attempt to make a prima facie showing that the information should be disclosed at the time. (*Id.*; Lodgment 1-2 at 248.) The Court of Appeal accurately explained that counsel's only response was to request the judge explain to the jury why the privilege claim was being sustained. (Lodgment 9 at 12; Lodgment 1-2 at 248 ("I'd ask the court to explain to the jury why the objection is being sustained so that it's not left open.").) The Court of Appeal also concluded Petitioner had a second opportunity to make a prima facie showing at the sidebar ordered by the trial judge when the privilege was raised in

response to a question about how many officers were observing the transaction. (Lodgment 9 at 12-13.) As the Court of Appeal notes, this conference was not recorded, but a settled statement was prepared for purposes of Petitioner's appeal. (Lodgment 9 at 13 n.5.) It reflects there was a discussion among the court and counsel and the trial judge indicated she would not require Officer Pajita to answer any questions that might compromise his or other officer's safety. (*Id.*; Lodgment 4 at 61-68.)

The Court of Appeal goes on to explain that even if Petitioner was denied an opportunity to make a prime facie showing, the error was harmless because Petitioner would not have been able to make a prima facie showing for the disclosure. (Lodgment 9 at 13.) Specifically, the court found that the only testimony Petitioner needed to undermine, Officer Pajita's, was not affected by the undisclosed information concerning other surveillance team members. (*Id.* at 13-14.) Petitioner's defense was that the prosecution failed to prove beyond a reasonable doubt that Petitioner was the person that sold drugs to Officer Pajita. But, as the Court of Appeal explained, "the only *testifying* witness who observed the narcotics transaction was Officer Pajita, who engaged in the face-to-face transaction with Palmer." (*Id.* at 13 (emphasis in original).) The Court of Appeal found the credibility of Officer Pajita's testimony identifying Petitioner as the person he engaged in the transaction with would not have been affected by the information about other surveillance team members. (*Id.* at 14.)

The Court of Appeal also found the trial court did not err in failing to make an adverse finding, such as striking Officer Pajita's testimony, because Petitioner could not have shown the undisclosed testimony was material to Petitioner's defense of mistaken identity. (Lodgment 9 at 15.) The Court of Appeal found that because none of the other surveillance team members testified about observations of the transaction from a surveillance location, their locations and the number of them that were observing were not material. (*Id.* at 15.) The court additionally found the privileged information was not material with respect to Officer Sanchez's testimony — hearing a description from Officer Pajita of the seller and seeing someone meeting that description (Black male, gray

sweatshirt) walking along Park Boulevard away from Officer Pajita's location — because it was sufficiently corroborated by Officer Woods' testimony. (*Id.* at 16 (citing *Lewis*, 172 Cal. App. 4th at 1438 (finding location of surveillance is not material if testimony is corroborated by independent evidence)).) Officer Woods testified that he also heard a description of the suspect (Black male, gray hooded sweatshirt), and observed someone meeting that description walking westbound near Park Boulevard, while driving a marked police car. (*Id.* at 17.)

The Court of Appeal also rejected Petitioner's contention that the trial court erred in failing to make a specific finding under § 1040(b)(2) that disclosure was against public interest because the need to preserve confidentiality outweighed the need for disclosure. (*Id.* at 17.) The court found the trial court's statement to the jury that the privilege was sustained for officer safety reasons and the determination following the side bar that the court would not require Officer Pajita to answer any questions that would compromise his or other officers' safety complied with the statute even if the specific words of the statute were not used. (*Id.* at 17-18.)

Finally, the Court of Appeal found that even if the trial court erred in any way as to §§ 1040 or 1042, the errors were harmless because the evidence of Petitioner's guilt was overwhelming. (*Id.* at 18.) Officer Pajita testified that he purchased drugs from Petitioner, was literally a foot away from him at the time, identified him at the scene, identified him in court, and provided a specific description of him following the transaction (Black male, gray hooded sweatshirt, hair tied back in a ponytail, wired glasses) that a matched a photograph taken of Petitioner that night. (*Id.* at 18-19.)

### a)     Alleged Error of State Law

In Ground One, Petitioner claims that "the trial court prejudicially erred when it sustained Officer Pajita's claim of privilege under Evidence Code [§] 1040 without following the procedures mandate[d] by Evidence Code [§§] 1040 [and] 1042." (Pet. at 15.) Similarly, under the heading "Questions Presented," Petitioner states the trial court erred under Evidence Code §§ 1040 and 1042. (Pet. at 27.) The Petition states only a

potential error of state law, *i.e.* that the state court failed to follow procedures mandated by state law. However, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Little v. Crawford*, 449 F.3d 1075, 1083 n. 6 (9th Cir. 2006) (Courts "cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."). Federal habeas writs may not issue on the basis of a perceived error of a state law. *Id.* ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Jammal v. Van de Kamp*, 926 F2d 918, 919-920 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point."). In this respect, the Court recommends the claim be denied because the Petition states only an error in the application of state law. However, the Court has considered possible constitutional challenges below because Petitioner mentions Due Process in his Petition and in his petitions before the state courts, one of which is attached to his Petition here. (Pet. at 35-77.) In his state petitions, he raised Due Process and the Confrontation Clause challenges concerning the surveillance privilege. (Lodgment 6 at 20-32; Lodgment 10 at 17-19.) As explained below, even if Ground One is construed as asserting violations of the Confrontation Clause and Due Process, it still fails.

### b) Confrontation Clause

Under the Sixth Amendment, defendants have the right to cross examine adverse witnesses. *Deleware v. Van Arsdall*, 475 U.S. 673, 678 (1988). However, trial courts may place limits on cross examination. *Id.* at 679. The Supreme Court has not addressed California's surveillance post privilege, however, district courts analyzing § 1040 have looked to the Supreme Court's analysis of a similar privilege, the informer's privilege for guidance. *Haider v. Dir. of Corrs.*, 992 F. Supp. 1192, 1195-1196 (C.D. Cal. 1998) (citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957)); *Babers v. Harrington*, 2012

WL 6839919, at*12-13 (C.D. Cal. Nov. 28, 2012) (the same). *Rovairo* explained that "[w]here the disclosure of an informer's identity, or the contents of his communications is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-61 (emphasis added). The court also set out a balancing test between the "public interest in protecting the flow of information" and "the individual's right to prepare his defense." *Id.* at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

Although explained in terms of California's §§ 1040 and 1042, the Court of Appeal found that Petitioner could not show that the testimony he sought was relevant. (Lodgment 9 at 13-15.) In particular, the court found it significant that the location and number of other officers involved did not undermine Officer Pajita's testimony that he bought cocaine base from Petitioner in a face-to-face transaction. (*Id.*) The number and location of the other officers was not relevant because none of them testified that they observed Petitioner sell the cocaine base. (*Id.* at 15.)

The Court cannot find the Court of Appeal's conclusion on this issue was contrary to or an unreasonable application of clearly established federal law. Petitioner was entitled to try to undermine Officer Pajita's testimony through cross examination and present his defense. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.") However, the location and number of other surveillance team members did not undermine Officer Pajita's testimony or any other witness' testimony because no one testified to observations of the transaction from a surveillance location. Officer Sanchez did testify that he was observing from a surveillance location, but he also testified on

cross examination that he did not see the transaction and that even after he identified Petitioner in the area based on Officer's Pajita's description, he lost track of him. (Lodgment 1-2 at 260-61.) The location of the surveillance team and the number observing the transaction was not relevant because there was no testimony as to their observations.

As to the significance of the information to Petitioner's defense of mistaken identity, Petitioner asserts nothing more than speculation. Petition states that "[t]he information was material to the defense," but offers no explanation how. (Pet. at 15.) In his state petitions, he argued that if other officers had observed the transaction as Officer Pajita did, they would have testified to it, but if their versions contradicted Officer Pajita's, Petitioner could have called them as witnesses. (Lodgment 6 at 26; Lodgment 10 at 15-16.) Petitioner is essentially seeking to undermine testimony against him that was never given. As explained above, this privilege typically becomes an issue when a police officer testifies to observations of a drug sale from a surveillance location. The location may be relevant to undermine the testifying officer's observations if it was at a significant distance or there was some basis for asserting the view might have been obstructed. But that was not the case here because the testifying witness was engaged in the transaction[9] and the only other officers that testified, did not testify to observations of the transaction from a surveillance location. The location and number of officers observing did not matter because none of them testified against Petitioner. As to the Confrontation Clause, taking into account the circumstances of the case, the crime charged, Petitioner's defense, and in particular the insignificance of the location and

_____

[9] At trial, there was an issue raised as to Officer Pajita's location when he identified Petitioner after he was taken into custody by other officers, but a stipulation that Officer Pajita was at a "reasonable distance" when he identified Petitioner was read into the record at trial. (Lodgment 1-2 at 300.) Officer Pajita also identified Petitioner as the person he purchased cocaine base from in court. (*Id.* at 238.)

number of surveillance team members that did not testify against Petitioner there was no violation of the Confrontation Clause in sustaining the privilege.

Even if the trial court erred in sustaining the privilege, Petitioner is not entitled to habeas relief on this claim because Petitioner has not shown the error was prejudicial. A showing of constitutional error under the Confrontation Clause only merits habeas relief if the error was prejudicial, that is, if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Holley v. Yarborough*, 568 F.3d 1091, 1100 (9th Cir. 2009) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see also Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009) (explaining that Confrontation Clause errors are subject to harmless error analysis). "[I]n reviewing state court decisions for harmless error in the context of habeas petitions, federal courts review to determine if the error had 'a substantial and injurious effect or influence in determining the jury's verdict.'" *Slovik*, 556 F.3d at 755 (quoting *Brecht*, 507 U.S. at 623). As discussed above, the information that was not disclosed was the location of and number of surveillance team members observing the transaction. Assuming there were any other officers observing the transaction, the most Petitioner could have done is point to the absence of those officers' testimony. But, when considered in the context of Officer Pajita's testimony that Petitioner sold him cocaine base and Officer Pajita's identification of Petition following the transaction and in court, as well as Petitioner running when confronted by police, the Court cannot find the error, assuming there was one, had "a substantial and injurious effect or influence in determining the jury's verdict." *Id.*

### c) Due Process

As to a possible Due Process violation, "[i]t is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999) (citing *Henry v. Kernan*, 177 F.3d 1152, 1159 (9th Cir. 1999)). Petitioner must show that the alleged error "so fatally infected the proceedings as to render them fundamentally unfair." *Jammal*, 926 F.2d at 919.

For the same reasons discussed above, the Court cannot find sustaining the privilege rendered the trial fundamentally unfair. Petitioner was seeking information that might have been relevant if any of the other officers testified to observations from the undisclosed locations. Even if this was an error and the trial court should have required the disclosure, given no other officer testified to the transaction, the impact on Petitioner's trial was, at best, minimal. The most significant evidence against Petitioner, his sale of cocaine base to an undercover police officer that identified him and that he ran when confronted by police, would not have been undermined in any significant way by the information about how many additional officers were observing the transaction or the locations from which they observed it. And, the most Petitioner might have been able to do with that information is speculate about the absence of their testimony to reinforce that no one other than Officer Pajita testified that Petitioner sold Officer Pajita cocaine base. Petitioner's counsel essentially did just that in closing, noting the absence of anyone other than Officer Pajita seeing the transaction and the possible ways he might have been mistakenly identified. (Lodgment 1-2 at 322-26.) Even if there was an error in sustaining the privilege, Petitioner has not shown that the alleged error "so fatally infected the proceedings as to render them fundamentally unfair." *Jammal*, 926 F.2d at 919.

Based on the foregoing, the Court **RECOMMENDS** habeas relief be **DENIED** on Ground One.

**B.     Grounds Two and Three – Jury Instructions**

Petitioner asserts in Grounds Two and Three that the trial court erred in failing to *sua sponte* instruct the jury under California jury instructions CALCRIM 332 and 251.[10] As with Ground One, in Grounds Two and Three, the Petition does not assert how the

---

[10] The Petition does not identify under Ground Three the specific instruction Petitioner argues the trial court should have *sua sponte* given. However, he identifies CALCRIM 251 in his petitions before the state court.

alleged errors by the trial court in failing to give particular California jury instructions violated the Constitution, laws, or treaties of the United States. (Pet. at 16-17.) As explained more fully above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle*, 502 U.S. at 67-68.

"On federal habeas, the issue is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at 72). In conducting this analysis, the instruction must be considered in the context of the entire trial record and the instructions as a whole. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "The burden on the habeas petitioner is 'especially heavy' where, as here, the alleged error involves the failure to give an instruction." *Id.* (quoting *Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (9th Cir.1992) (as amended); *see also Murray v. Schiro*, 746 F.3d 418, 451 (9th Cir. 2014) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."). Additionally, even if there is an error, to obtain relief, the error must have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38.

### 1. CALCRIM 332

As to 332, Petitioner argues the trial court should have given the expert opinion instruction because Officer Pajita provided an expert opinion. The Petition does not identify the testimony Petitioner believes constituted expert testimony, explain the alleged error in not giving the instruction, or otherwise explain how any error was prejudicial to Petitioner. However, in looking to Petitioner's Petition before the California Court of Appeal, he argues the following testimony by Officer Pajita constituted expert testimony: meaning of street jargon ("a twenty"), that the sale occurred in a high narcotics area, the likelihood of recovering prerecorded currency and reasons it

sometimes is not recovered, that those selling drugs work in groups, and that cocaine base can break into smaller pieces. (Lodgment 6 at 40-48.)

As to 332,[11] the Court of Appeal assumed, without deciding, that Officer Pajita gave expert testimony and the trial court erred in not *sua sponte* instructing under 332, but found the error was harmless. (Lodgment 9 at 25.) Specifically, the Court of Appeal found Petitioner failed to show there was a reasonable probability the jury would have rendered a more favorable verdict if the instruction had been given. (*Id.* at 25.) In reaching this conclusion, the Court of Appeal identified other instructions that were given concerning judging the credibility of any witnesses, the option to believe none of a witness' testimony, factors to consider in evaluating a witness' testimony, and an instruction that the jurors were the exclusive judges of the facts. (*Id.* at 25.) Based on these instructions, the Court of Appeal found the jury would have properly considered Officer Pajita's testimony, "including any expert opinions he may have given." (Lodgment 9 at 26.) In rejecting one of Petitioner's arguments, the Court of Appeal also found it significant that the supposed expert testimony did not have anything to do with Petitioner's defense of mistaken identity. (*Id.* at 26.)

Petitioner has not shown that the absence of an instruction that was largely covered by other instructions "itself so infected the entire trial that the resulting conviction

---

[11] The relevant portion of CALCRIM 332 provides:
(A witness was/Witnesses were) allowed to testify as [an] expert[s] and to give [an] opinion[s]. You must consider the opinion[s], but you are not required to accept (it/them) as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

violate[d] due process." *Clark*, 450 F.3d 904. Assuming Officer Pajita's testimony was expert testimony and the trial court erred in not giving the instruction, as the Court of Appeal explained, the way the jurors were instructed to treat any witness' testimony was very similar to how jurors would have been instructed to treat an expert witness' testimony under 332. CALCRIM 226 instructed in part, "you alone must judge the credibility or believability of the witnesses . . .[and] you must judge the testimony of each witness by the same standards." The only distinction might have been the instruction to consider the underlying information on which the expert relied in reaching their opinion. However, in the context of the trial as a whole, any impact would have been minimal. Most of the testimony Petitioner identifies as being expert testimony had very little to do with Petitioner's defense. His defense was that he was not the person that sold drugs to Officer Pajita. This required challenging the accuracy of Officer Pajita's identification of Petitioner and emphasizing he did not have the prerecorded currency. In this respect, the only testimony that Petitioner has identified as being expert testimony that was of any significance is the testimony concerning reasons prerecorded currency might not be recovered and that drug dealers work in groups. His testimony regarding it being a high narcotics area and explaining the meaning of a "twenty" (somewhat self-evident from what was exchanged for twenty dollars after Officer Pajita asked to buy a twenty) had no bearing on his defense. The Court cannot find the absence of the additional emphasis the expert instruction might have placed on how the jurors were to consider this limited testimony so infected the entire trial that Petitioner's conviction violated due process.

### 2.    CALCRIM 251

As to 251,[12] Petitioner argues the trial court erred in failing to give the instruction. CALCRIM 251 explains the required union of act and wrongful intent or mental state for

---

[12] CALCRIM 251 provides:
The crime[s] [(and/or) other allegation[s]] charged in this case require proof of the union, or joint operation, of act and wrongful intent.

the crime alleged. The Court of Appeal found this instruction was not necessary because the other instructions given on the specific charged offenses – CALCRIM 2656 for resisting arrest and CALCRIM 2300 for selling a controlled substance – adequately informed the jury that the prosecution had to prove Petitioner committed the charged offenses with the required mental state. (*Id.* at 28.) As to the resisting arrest, the Court of Appeal explained that the jury was instructed "when the defendant acted, he knew or reasonably should have known that Marlo Woods was a peace officer performing or attempting to perform his duties." (*Id.*) And while CALCRIM 2300 did not contain similar language, the trial court did give CALCRIM 225 that instructed the prosecution had to prove "not only that Palmer did the acts charged, but also that he acted with a particular intent." (*Id.*) The Court of Appeal concluded that these instructions sufficiently instructed that the prosecution had to prove Petitioner committed the acts charged and that when he acted he had the required mental state or intent.

Again, Petitioner has not shown that the absence of an instruction that was covered by other instructions "itself so infected the entire trial that the resulting conviction violates due process." *Clark*, 450 F.3d 904. Here, any error at all would be in not giving an instruction, as opposed to giving an incorrect instruction. And, the absent instruction must be consider in the context of the whole trial, including instructions as to the specific offenses with an additional instruction explaining the jurors must find he acted with the required intent. This weighs against a finding of a due process violation because the absence of an instruction, particularly one that is accurately covered by other instructions,

---

For you to find a person guilty of the crime[s] (in this case/ of <insert name[s] of alleged offense[s] and count[s], e.g., burglary, as charged in Count 1> [or to find the allegation[s] of <insert name[s] of enhancement[s]> true]), that person must not only intentionally commit the prohibited act [or intentionally fail to do the required act], but must do so with a specific (intent/ [and/or] mental state). The act and the specific (intent/ [and/or] mental state) required are explained in the instruction for that crime [or allegation].

is less likely to mislead a jury. Additionally, a review of the entire trial transcript reflects that Petitioner's intent was not an issue in this case. His defense was mistaken identity. Either he was or was not the person that sold cocaine base to an undercover officer. To the extent there was any error, it was not on an issue of significance in the case and it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S.at 637-38.

The Court **RECOMMENDS** relief be **DENIED** on Grounds Two and Three.

## C. Ground Four

In Ground Four, Petitioner claims "Ineffective Assistance of Counsel/Declined to Strike [Petitioner's] prior strike conviction." (Pet. at 18.) In support, the Petition includes language about the combined effect of cumulative errors violating his constitutional rights. (*Id.*) Petitioner then goes on to state that his counsel was ineffective due to many errors. (*Id.*) However, the only potential error stated under this ground is "counsel at trial presented no defence[sic] for appellant but went off of the district attorney['s] evidence, never presenting her version . . . of appellant's reasonable doubt. Ineffective assistance of counsel.[sic]"

The only other references in the Petition to ineffective assistance of counsel are under a heading for Questions Presented. (Pet. at 27.) Petitioner repeats Ground Two above, that the trial court erred in failing to give CALCRIM 332, but follows with "then counsel provided ineffective assistance of counsel" and also repeats the claim that defense counsel did not provide a defense later in that same section. (*Id.*) This portion of the Petition also states that "[t]he trial court abused its discretion to strike a prior strike? Appellant fits in the scope to have the strike striking [sic]." (*Id.*)

Based on the foregoing, the Court can identify three possible claims Petitioner may be asserting that are briefly addressed below: (1) ineffective assistance of counsel based on failing to request CALCRIM 332 and failing to present a defense; (2) trial court error in failing to strike Petitioner's prior strike; and (3) cumulative error.

///

## 1.    Ineffective Assistance of Counsel[13]

Neither the California Supreme Court nor the Court of Appeal considered Petitioner's claims regarding ineffective assistance of counsel related to 332 or Petitioner's claim regarding presenting a defense because they were not raised on appeal.[14]

However, even applying only *Strickland v. Washington*'s deferential review, rather than the doubly deferential review created by deference under *Strickland* and AEDPA's state court deference combined, on a review of the record, the claims fail.  *See Woods*, 135 S. Ct. at 1376 (explaining doubly deferential review); 466 U.S. 668 (1984).

"A defendant who claims to have been denied effective assistance [of counsel] must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice."  *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (citing *Strickland*, 466 U.S. at 687).  This "first prong sets a high bar." *Id.* "A defense lawyer navigating a criminal proceeding faces any number of choices about how best to make a client's case." *Id.*  Counsel's constitutional obligation under *Strickland* is satisfied "so long as his decisions fall within the 'wide range' of professionally competent assistance." *Id.* (quoting *Strickland*, 466 U.S. at 690); *see also Harrington*, 562 U.S. at 104.  "The question is whether an attorney's representation amounted to incompetence under

---

[13] To the extent Petitioner is arguing that his counsel was ineffective in failing to convince the trial court to strike his prior strike, that claim would have no merit.  His counsel filed a Sentencing Statement seeking to strike his prior strike.  (Lodgment 3 at 122-125.)  Additionally, at Petitioner's sentencing hearing, she emphasized how long ago the strike was, that his behavior was not escalating, and emphasized this was only a $20 transaction.  (Lodgment 1-4 at 356-57.)  Although she was unable to overcome Petitioners criminal history, including two felonies and numerous parole violations in the intervening years since his strike conviction, her representation certainly fell within the wide range of professionally competent assistance. *Buck*, 137 S. Ct. at 775.

[14] There is no ineffective assistance of counsel claim in his Petition to the California Supreme Court and the only ineffective assistance of counsel claims raised in his Petition to the Court of Appeal were based on failing to preserve issues on appeal.

'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690.) "It is only when the lawyer's errors were 'so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied." *Buck*, 137 S. Ct. at 775 (quoting *Strickland*, 466 U.S. at 687).

Courts need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697. However, assuming a defendant can establish deficient performance under this highly deferential standard, prejudice must also be shown. *Harrington*, 562 U.S. at 104. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting *Strickland*, 466 U.S. at 693). A defendant "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687.

As to counsel not requesting CALCRIM 332, Petitioner has not shown that not requesting this instruction fell outside the range of acceptable assistance of counsel. Petitioner's counsel may have had strategic reasons for not requesting the instruction, including not wanting to give any more weight to Officer Pajita's testimony. In closing, Petitioner's counsel emphasized that the jury should not give any greater weight or emphasis to his testimony and should question his testimony, even though he was a police officer, as they would anyone else that might testify. (Lodgment 1-2 at 322 .) Giving the expert opinion instruction might have added additional guidance on how to treat the portions of his testimony that qualified as expert testimony, but it would also have treated him as an expert, which might have led the jury to give his testimony more rather than less weight. Additionally, as discussed more fully above, given the other instructions that addressed the weight to give to Officer Pajita's testimony, Petitioner has

not shown the result of the case would have been different had the instruction been given. Because Petitioner has failed to meet either the deficiency or prejudice prongs of *Strickland*, the Court recommends relief on this claim be denied.

As to Petitioner's claim that his counsel failed to present a defense, that is simply not accurate. Based on a review of the record, counsel's defense was mistaken identify. She emphasized that the prerecorded currency used to pay for the cocaine base was not found on Petitioner, that only one officer observed the transaction and identified Petitioner, and she sought to undermine that identification based on the time of day (getting dark) and distance from which Petitioner was later identified by Officer Pajita. She was faced with an undercover officer testifying that her client sold him drugs face-to-face on the street and when he was stopped by police, he ran. Petitioner's counsel did present a defense well within the range of professional assistance. The jury just did not believe it. Because Petitioner has failed to identify any deficiency or show how that deficiency was prejudicial, the Court recommends this claim be denied.

### 2. Failing to Strike a Prior Strike

Petitioner appears to be challenging the trial court's denial of his *Romero* motion to strike his prior strike conviction. *See People v. Romero*, 13 Cal. 4th 497 (1996). As noted above, because Petitioner had a prior conviction that qualified as a strike under California's Three Strikes law, his four-year mid-range sentence on his conviction for selling a controlled substance was doubled to eight years. However, the only basis the Court can identify for his challenge to the trial court's denial of his motion to strike the strike is that he believes the record did not support it. Under Ground Four's supporting facts, the Petition states "abuse of discretion conviction is not supported by the record." (Pet. at 18.) Given the denial of a *Romero* motion is reviewed by the Court of Appeal for abuse of discretion and the ground is titled in part "Declined to strike appellant's prior strike conviction," it appears Petitioner is arguing that the trial court's decision not to strike his prior strike was not supported by the record. (*Id.*)

As noted above, federal habeas writs may not issue on the basis of a perceived error of a state law. *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Sentencing error claims, like the one asserted here, generally do not raise a federal constitutional question and are not cognizable on federal habeas review. *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 901 (2003), remanded to 66 Fed. Appx. 136 (9th Cir. 2003) (claim that trial court abused its discretion by failing to strike prior conviction alleged under Three Strikes Law not cognizable on federal habeas review); *Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989) (refusing to consider the merits of whether particular prior conviction qualifies for sentence enhancement under California law because it is not cognizable on federal habeas corpus review); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir.1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not justify federal habeas relief"); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and it not within the purview of federal habeas corpus"); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (rejecting claim of due process violation based on denial of merger of convictions for purposes of sentencing because there is no federal right to merger of convictions).

"The federal constitutional question is whether [the error] is so arbitrary or capricious as to constitute an independent due process . . . violation.'" *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Christian*, 41 F.3d at 469 ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.").

As an initial matter, the Petition does not identify any error in the trial court's denial of his motion to strike his prior strike, certainly not one rising to the level of fundamental unfairness or that could be considered arbitrary or capricious. In the state court petitions, he emphasized how long ago the strike was, that his felony convictions

since were not violent, and challenged the trial court's conclusion that he was a drug dealer. However, as the Court of Appeal explained, the record before the trial court reflected that Petitioner had a 30-year criminal record, that in addition to receiving numerous lengthy sentences, he also violated parole multiple times, including as recently as 2011 when he violated parole two days after being released from prison. (Lodgment 9 at 31-32.) Petitioner has not shown any error in the state's application of its own sentencing law, certainly not one so arbitrary and capricious as to constitute a due process violation. The Court recommends this claim be denied.

### 3. Cumulative Error

Petitioner asserts that the combined effect of multiple trial court errors violated due process and rendered his trial fundamentally unfair. The Court of Appeal rejected this claim, finding any errors did not rise to the level of reversible and prejudicial error.

"The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011) (quoting *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007)). However, relief is only warranted "when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case." *Id.* (quoting *Parle*, 505 F.3d at 927). The errors Petitioner raises, to the extent they are errors at all, do not amplify each other. Testimony regarding the number officers observing the drug sale and their locations does not become a more significant error because two jury instructions were absent. Rather than impacting each other on a key issue, they largely have little connection and concern issues that were not key in the case. Because the combined effect of the errors asserted did not infect the trial with unfairness, relief on this claim is not warranted.

The Court **RECOMMENDS** the claims asserted under Ground Four be **DENIED**.

///

///

### D. Ground Five

Ground Five is titled "Augment requests" and is followed by a list of trial documents.  (Pet. at 19.)  Listed later in the Petition under a heading 7, also titled Augment request, Petitioner request transcripts.  (Pet. at 26.)  Although Petitioner has not explained why he needs these documents, all the items identified in both lists have been provided to Petitioner as lodgments in this case.  Accordingly, the Court recommends the requests be denied as moot.

### E. Ground Six

In Ground Six, Petitioner argues that his sentence was unauthorized.  (Pet. at 20-22, 26.)  He claims under California Penal Code § 1385 his two prison-prior term enhancements should have been stricken rather than stayed and the trial court should be required to state its reasons for striking the prison priors.  (*Id.* at 20.)  It does appear from the record that when Petitioner was originally sentenced his prison priors were stayed.  (Lodgment 3 at 126-127 (October 9, 2014 Felony Abstract of Judgment).)  However, on January 16, 2015, the trial court recalled the sentence and amended it to strike Petitioner's two prison priors and stated its reasons for striking them.  (Lodgment 5 at 48.)  This appears to have been done at the request of Petitioner's appellate counsel.  (Lodgment 5 at 19-22.)  Given the relief Petitioner seeks has already been provided by the trial court, the Court **RECOMMENDS** relief on Ground Six be **DENIED**.

## V. CONCLUSION AND RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying the Petition.

**IT IS ORDERED** that no later than **October 13, 2017,** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 27, 2017.**

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: September 22, 2017

_____
Hon. Bernard G. Skomal
United States Magistrate Judge